**Ronald L. HALL and Laura Hall, Appellants**

v.

**C & P TELEPHONE COMPANY.**

**No. 84–5897.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 10, 1986.

Decided June 24, 1986.

---

Mark J. Brice, with whom Joseph H. Koonz, Jr., Carolyn McKenney, and Roger C. Johnson, Washington, D.C., were on brief, for appellants.

Donald P. Maiberger, Washington, D.C., for appellee.

Before STARR, Circuit Judge, and WRIGHT and MACKINNON, Senior Circuit Judges.

Opinion for the court filed by Senior Circuit Judge WRIGHT.

J. SKELLY WRIGHT, Senior Circuit Judge:

We review the dismissal for want of subject matter jurisdiction of appellants' suit for, *inter alia*, intentional infliction of emotional distress and bad-faith refusal to make timely workers' compensation benefits payments. In issuing its judgment the District Court deferred to the view of the District of Columbia Court of Appeals that such tort suits were precluded by the District of Columbia Workers' Compensation Act of 1928, 36 D.C.Code § 501 *et seq.* (1973) (repealed) (the D.C. Compensation Act).[1] By its terms the D.C. Compensation Act merely applies the provisions of the Longshoremen's and Harbor Workers' Compensation Act of 1927, 33 U.S.C. § 901 *et seq.* (1982) (the Longshoremen's Act), to the District of Columbia.[2] This case therefore calls into question the application of *Erie*[3] principles to the construction by the District of Columbia Court of Appeals of a special type of statute: an Act of Congress that applies exclusively to the District of Columbia but whose substance merely mirrors that of another federal statute that applies to the nation as a whole. Because we find that the D.C. Compensation Act is a "local" law, we believe deference to the construction of the District of Columbia Court of Appeals was proper under the circumstances. We therefore affirm the District Court's judgment.

1. In 1980 the D.C. Council enacted a new workers' compensation scheme independent of the Longshoremen's Act. *See* 36 D.C.Code § 301 *et seq.* (1981 & 1985 Supp.). Because the pertinent events in this case transpired before the effective date of the new law, the old D.C. Compensation Act of 1928 governs this case. *See Garrett v. Washington Air Compressor Co.,* 466 A.2d 462, 462 n. 1 (D.C.C.A.1983).

2. This general incorporation of 33 U.S.C. § 901 *et seq.* is subject to several exceptions under 36 D.C.Code § 502 (1973). Those exceptions are not pertinent to this case.

3. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938).

## I. BACKGROUND

Appellants' complaint alleges that on or about October 11, 1979 appellant Ronald Hall suffered an employment-related back injury while employed as a cable splicer by appellee C & P Telephone Company (C & P).[4] Ronald Hall filed for workers' compensation benefits under the applicable statute, the D.C. Compensation Act. On July 23, 1981 an Administrative Law Judge in the Office of Workers' Compensation Programs, United States Department of Labor, ordered C & P, as Ronald Hall's self-insured employer, to pay compensation benefits as well as all past and future medical and hospital expenses arising out of the October 11, 1979 accident.

Appellants allege that for nearly three years C & P failed to reimburse Ronald Hall on a timely basis for the bulk of his injury-related medical expenses due under the ALJ's award.[5] They claim that during that time Ronald Hall was subjected to the threat of credit action by his health care providers and that their marriage suffered because of the financial strain produced by appellee's failure to make timely payments.

On May 2, 1984 appellants filed a complaint in the District Court alleging intentional infliction of emotional distress and bad-faith refusal to make timely payments.[6] Appellee filed a motion to dismiss their complaint for lack of subject matter jurisdiction.[7] In support of its motion appellee cited a recent opinion of the District of Columbia Court of Appeals, *Garrett v. Washington Air Compressor Co.*, 466 A.2d 462 (D.C.C.A.1983). Appellee argued that *Garrett* effectively held that the ex-

clusivity provisions of the D.C. Compensation Act, 33 U.S.C. § 905(a) (1982), barred any court from taking jurisdiction of appellants' independent civil claims. *See* defendant-appellee's Memorandum of Points and Authorities in support of its motion to dismiss filed June 11, 1984 at 7.

On November 28, 1984 the District Court entered an order granting appellee's motion to dismiss. In so doing the court expressly relied on *Garrett*'s analysis of the exclusivity provisions of the D.C. Compensation Act. This appeal ensued.

Our decision turns on resolution of two issues: First, whether the District Court properly deferred to the opinion of the District of Columbia Court of Appeals in *Garrett* construing the preclusive effect of the D.C. Compensation Act. Second, assuming the District Court was bound to follow the *Garrett* interpretation of the statute, whether appellants' claims are barred by that construction.

## II. DEFERENCE TO THE DISTRICT OF COLUMBIA COURT OF APPEALS

### A. *The Legal Standard Governing Deference to Construction of "Local" Federal Statutes by the D.C. Court of Appeals*

It is now well established that this court will apply *Erie* principles to the decisions of the District of Columbia Court of Appeals. *See Lee v. Flintkote Co.*, 593 F.2d 1275, 1278 n. 14 (D.C.Cir.1979). Noting the Court Reform Act's command that the D.C. Court of Appeals be treated as the "highest court" of the District, the *Lee* court ruled that *Erie* principles should apply to

---

**4.** Appellee's Fed.R.Civ.P. 12(b)(1) motion was granted on the pleadings. We therefore credit appellants' statement of the case. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

**5.** According to appellants' Supplemental Opposition to Defendant's Motion to Dismiss filed Dec. 3, 1984 at 2–3, appellee did pay virtually all of Ronald Hall's outstanding medical bills following initiation of this suit.

**6.** Appellant Laura Hall therefore joined her husband Ronald Hall's complaint, adding a claim of loss of consortium. Appellants concede that

this claim is purely derivative of Ronald Hall's underlying claims for intentional infliction of emotional distress and bad-faith failure to make timely payments. *See* brief for appellants at 15. Appellants also included a claim of negligent failure to make timely payments. This claim has been abandoned on appeal. *See id.* at 10.

**7.** Appellee also argued that appellants had failed to state a claim and that their suit should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Because we uphold appellee's jurisdictional defense we have no occasion to pass on the merits of its Rule 12(b)(6) motion.

the decisions of the D.C. Court of Appeals so as to limit forum-shopping and promote uniformity in the rules of decision governing local affairs. *Id.*

Our case, however, does not concern deference to development of common law principles by the D.C. courts. The "local" law at issue in this case is an Act of Congress that amended the District of Columbia Code. Congress acted pursuant to its plenary authority to exercise legislative power for the District of Columbia. U.S. Const. Art. I, Sec. 8, cl. 17. Moreover, it is a statute that merely applies the terms of another federal statute: the Longshoremen's Act. The latter is an act of national scope as to which there is a clear federal interest in uniform application. An unadorned statement of deference to the District of Columbia Court of Appeals would be mechanical at best under the circumstances. Although this court has on occasion applied *Erie* principles to construction of Art. I, Sec. 8, cl. 17 statutes,[8] our research reveals no case where deference was accorded a District of Columbia Court of Appeals construction of a "local" congressional enactment that simply applied the terms of a "national" statute.

The Supreme Court, however, has addressed the analogous question of the deference *it* will give to the D.C. Court of Appeals' construction of Art. I, Sec. 8, cl. 17 statutes. In *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), the Court reviewed an alleged right to a jury trial for an action brought under 16 D.C.Code § 1501 *et seq.* (1973), the statutory provision governing eviction of tenants for nonpayment of rent. The District of Columbia Court of Appeals had held that the statute in question did not provide for a right to a jury trial. Prior to 1970 another provision of the D.C.Code, 13

D.C.Code § 702, had provided for a right to jury trial in such eviction actions.

In deferring to the District of Columbia Court of Appeals' view of congressional intent, the Supreme Court noted that the purpose of the Court Reform Act of 1970, Pub.L. No. 91–358 § 142(5)(A), 84 Stat. 552, was to give the District of Columbia a court system " 'comparable to those of the states * * *.' " 416 U.S. at 367, *quoting* H.R.Rep. No. 91–907, 91st Cong., 2d Sess. 23 (1970). The Court reasoned that this legislative intent strongly suggests that federal courts ought to give as much deference to local courts' interpretation of Acts of Congress "directed toward the District," *id.* at 368, 94 S.Ct. at 1726, as they do to their construction of the common law. The Court therefore explicitly stated that

> [t]his new structure plainly contemplates that the decisions of the District of Columbia Court of Appeals on matters of local law—both common law and *statutory* law—will be treated by this Court in a manner similar to the way in which we treat decisions of the highest court of a State on questions of state law. * * *

*Id.* (emphasis added).

The District of Columbia Court of Appeals read the congressional repeal of Section 13–702 as barring jury trials on any claim brought under 16 D.C.Code § 1501 *et seq.* The Supreme Court deferred to the statutory construction of the District of Columbia Court of Appeals, forcing the Court to face the petitioner's Seventh Amendment claim.

The Court concluded that it would defer to local courts' construction of Art. I, Sec. 8, cl. 17 statutes to the same degree that it would defer to their interpretation of common law questions: in either case it would accept the view of the District of Columbia

---

**8.** *See, e.g., Electrical Equipment Co. v. Security Nat'l Bank,* 606 F.2d 1357, 1360 n. 25 (D.C.Cir. 1979). In *Electrical Equipment* this court deferred to the District of Columbia Court of Appeals' construction of § 38–109 of the D.C.Code of 1973, a provision governing the priority of mechanic's liens. This provision was enacted by Congress in 1901, *see* 31 Stat. 1385, ch. 854

§ 1245 (1901), and the 1973 codification was itself carried out by congressional action. In deferring to the District of Columbia Court of Appeals' construction of this provision, this court observed that "in construing the D.C.Code we pay considerable deference to the pertinent recent decisions of the District of Columbia Court of Appeals." *See* 606 F.2d at 1360 n. 25.

Court of Appeals unless it found "egregious error." *Id.* at 369, 94 S.Ct. at 1726.[9]

We are aware that there are significant functional differences between the Supreme Court's review of the decisions of the District of Columbia Court of Appeals and this court's attempt to apply local law in a diversity case. We also note, however, that the Supreme Court's analysis was based on the same general perspective as that articulated by this court in *Lee v. Flintkote Co., supra,* 593 F.2d at 1278 n. 14: a prudential willingness to defer to the local courts, as suggested by the purpose and effect of the Court Reform Act of 1970. We are satisfied that the Supreme Court's view of the purpose of the Court Reform Act should guide us here as well.

Thus in applying this standard to this case, we must simply consider the relationship between the Longshoremen's Act and the D.C. Compensation Act. Because it appears that the Compensation Act is a "local" law, *i.e.,* a statute passed pursuant to Art. I, Sec. 8, cl. 17, we find that deference to the District of Columbia Court of Appeals was in order.

## B. *The Local Character of the D.C. Compensation Act*

■ Although the D.C. Compensation Act merely incorporates the terms of the

Longshoremen's Act, this court has long applied these statutes in operationally distinguishable fashion. Thus in *Gudmundson v. Cardillo,* 126 F.2d 521 (D.C.Cir. 1942), this court held that it would not apply the doctrine of *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1935), and would therefore defer to administrative determination of "jurisdictional facts" in its application of the D.C. Compensation Act, even if the rule in *Crowell* did apply to application of the Longshoremen's Act. This distinction was said to rest on the fact that, notwithstanding their surface similarities, the D.C. Act and the Longshoremen's Act were two distinct statutes passed with different purposes. Thus, the court insisted, D.C. Compensation Act claims do

> not arise under the Longshoremen's Act
> * * *. True enough, the language and provisions of the national Act are made applicable to the District, but the two Acts are wholly separate and distinct, for the reason that * * * in the * * * local act * * * Congress was exercising the powers granted in Sec. 8 of Art. I, and these powers, the Supreme Court said in *Keller v. Potomac Power Co.,* 261 U.S. 428, 442 [43 S.Ct. 445, 448, 67 L.Ed. 731] [(1942)], include not only the powers

9. The Supreme Court, however, has since identified at least one additional circumstance in which deference will *not* be accorded to the decisions of the District of Columbia Court of Appeals construing Art. I, § 8, cl. 17 Acts of Congress. In *Whalen v. United States,* 445 U.S. 684, 687, 100 S.Ct. 1432, 1435, 63 L.Ed.2d 715 (1980), the Court observed that it would not defer to the view of the District of Columbia Court of Appeals when resolution of a Double Jeopardy Clause claim turned on whether the relevant statute authorized imposition of successive sentences for rape and felony murder. In so ruling the Court observed that where resolution of a constitutional issue could not be separated from resolution of a question of statutory construction the Court would refuse to defer to the view of the District of Columbia Court of Appeals. Justice Rehnquist dissented on this point, arguing that deference to the local court was proper where no egregious error had been committed. 445 U.S. at 707, 100 S.Ct. at 1446.

We are far from convinced, however, that the "egregious error" or *Whalen* exceptions apply to

our application of *Erie* principles in this case. Nor do we believe that the approach taken by the Supreme Court in *Standard Oil Co. v. Johnson,* 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942), providing for independent review of "hybrid" local statutes incorporating federal legal standards, applies to our case. It is one thing for the Supreme Court, as the ultimate guardian of federal law, to adopt such exceptions. It is quite another thing for this court to adopt such exceptions as part of its *Erie* analysis. This is particularly true given the Court Reform Act's suggestion that we defer to the D.C. Court of Appeals' construction of local law.

In any event, we need not reach these questions in this case. It is plain that there has been no egregious error here and, although appellants have challenged the constitutionality of a broad reading of the preclusion provisions, this allegation is simply frivolous. Nor is there a substantial federal interest in this case so as to invoke the rule in *Standard Oil.*

that belong to Congress in respect of territory within a State but the powers of the State as well—a delegation which * * embraces full and unlimited jurisdiction * * * to provide for the general welfare of citizens within the District of Columbia * * *.

126 F.2d at 525.

Similarly, in *Director, OWCP v. National Van Lines, Inc.*, 613 F.2d 972 (D.C.Cir. 1979), this court indicated that the appellate jurisdiction of this court enjoys a broader sweep under the D.C. Compensation Act than it does under the Longshoremen's Act. The Longshoremen's Act states that appeal should be taken in "the United States Court of Appeals for the circuit in which the injury occurred * * *." *See* 33 U.S.C. § 912(c) (1982).

In *National Van Lines* the petitioner was injured in a highway accident in New York State. 613 F.2d at 977. The dissent therefore argued that the appeal should have been heard in the Second Circuit. *Id.* at 988. Although conceding that this was a plausible reading of the language of the statute in a Longshoremen's Act case, the majority declined to adopt it in *National Van Lines.* Noting that the case arose under the D.C. Compensation Act, and stressing the need for uniform interpretation of that Act, this court found that it had appellate jurisdiction in any case where the injuries gave rise to claims under the D.C. Act. *See id.* at 978–979 n. 20.[10]

Finally, we note that the District of Columbia Court of Appeals has explicitly considered the question whether the D.C. Compensation Act is a "local" law or whether its adoption of the Longshoremen's Act rendered it a "national" law. *See District of Columbia v. Greater Washington Central Labor Council*, 442 A.2d 110, 116–117 (D.C.C.A.1982), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983). In that case the D.C. court faced the issue

whether repeal of the old compensation scheme, 36 D.C.Code § 501 *et seq.* (1973), by the D.C. Council in 1980 and the enactment of a new workers' compensation law was valid under 1 D.C.Code § 233(a)(3) of the Self-Government Act. Under 1 D.C. Code § 602(a)(3) (1981) the D.C. Council has no power to amend or repeal laws that affect "functions or property of the United States." Reviewing the Supreme Court's treatment of the D.C. Compensation Act as an analogue of similar state statutes, the District's assumption of financial responsibility for the administrative cost of the program, and the legislative history of the Act, the D.C. court concluded that the D.C. Act was a "local" law that did not affect federal functions.

We find this analysis persuasive and therefore have little difficulty accepting the proposition that the D.C. Compensation Act is a "local" law to which we must apply the lesson of *Pernell.*

### III. THE APPLICABILITY OF GARRETT

Appellants argue that even if this court must defer to *Garrett* whenever that decision applies, it need not do do so in this case because it is distinguishable from *Garrett* on its facts. A review of the complaint in this case and of the holding in *Garrett*, however, does not support appellants' position.

In this case appellants have preserved two fundamental claims: (1) intentional infliction of emotional distress through willful untimely payment of an award, and (2) bad-faith failure to make timely payments. They contend that *Garrett* is distinguishable because the complaint in *Garrett* failed to allege a "specific intent to injure." Brief for appellants at 25. By contrast, appellants attempt to suggest that the *Garrett* plaintiff could not allege such a bad intent, but was merely frustrated by the lethargic pace of the administrative process.[11]

---

**10.** Under the D.C. Compensation Act an employee could file a claim for any work-related death or injury if his employer "carr[ied] on any employment in the District of Columbia, irrespec-

tive of the place where the injury or death occurs * * *." 36 D.C.Code § 501 (1973).

**11.** It is true that the *Garrett* court did speak of the appellant there *"apparently"* being frustrat-

The *Garrett* court, however, specifically restated the claims of the appellant in that case. They included "bad-faith" failure to pay benefits and refusal to make payments animated by " 'deceit, oppression, malice and outrage' * * *." 466 A.2d at 463 n. 2 (*quoting* plaintiff's complaint). We can see no meaningful difference between a "malicious" failure to make timely payments and a failure to make timely payments "with an intent to injure." We therefore find *Garrett* to control disposition of this case.

### IV. CONCLUSION

The policies underlying the Court Reform Act of 1970 suggest that this court should defer to the decisions of the District of Columbia Court of Appeals construing Acts of Congress that apply exclusively to the District of Columbia. Finding this case on all fours with the decision of the District of Columbia Court of Appeals in *Garrett,* we believe the District Court properly granted appellee's motion to dismiss for want of subject matter jurisdiction.

*Affirmed.*

ed with the administrative process, but this speculation on the part of the *Garrett* court was in no way essential to its holding. Of far great-

er significance are the terms of the complaint itself as restated in text.