**DALEY, Appellant, et al.,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Appellee.**

[Cite as *Daley v. Aetna Cas. & Sur. Co.* (1988), 61 Ohio App.3d 721.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 54728.

Decided Dec. 27, 1988.

*Kube & Weinberger Co., L.P.A.,* and *Peter H. Weinberger,* for appellant.

*Arter & Hadden, Raymond J. Marvar, Irene C. Keyse–Walker* and *Z. Sonali Bustamante,* for appellee.

---

ANN McMANAMON, Presiding Judge.

John E. Daley injured his back in November 1980 while he was employed as a dock worker for Todd Shipyards in Houston, Texas. The employer voluntarily paid temporary total disability benefits through appellee, Aetna Casualty and Surety Company ("the insurer"), pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), Section 901 *et seq.,* Title 33, U.S. Code.

Five years later, the insurer discontinued payments to Daley and contested his claim administratively. While these proceedings were pending, Daley sued the insurer in common pleas court, alleging bad faith and intentional infliction of emotional distress. The trial court granted summary judgment for the insurer.

In his sole assignment of error, Daley contends the court erred in granting summary judgment against him. Because we find no error in the ruling, we affirm the judgment of the common pleas court.

Daley premised his action upon the Supreme Court's holding in *Balyint v. Arkansas Best Freight System, Inc.* (1985), 18 Ohio St.3d 126, 18 OBR 188, 480 N.E.2d 417. In *Balyint* the court held that "[a]n employee of a self-insured employer may maintain a cause of action against the employer for the intentional and wrongful termination of workers' compensation payments." *Id.* at syllabus. Although the opinion itself received only plurality support, the majority agreed, for differing reasons, that the employer's conduct fell outside the scope of the Workers' Compensation Act. Cf. *Vandemark v. Southland Corp.* (1988), 38 Ohio St.3d 1, 525 N.E.2d 1374 (allowing an action in tort against a self-insured employer who fails to process a workers' compensation claim).

The insurer asserts various defects in the merits of Daley's claim. As a threshold matter, however, the insurer maintains the action is preempted by the provisions of the LHWCA.

In *Michigan Canners & Freezers Assn., Inc. v. Agricultural Marketing & Bargaining Bd.* (1984), 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399, 406, the Supreme Court explained that federal law preempts state law in three instances. First, the federal statute may expressly delineate the extent of preemption. See, *e.g., Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 95–96, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490, 499–500. Second, the federal regulatory scheme may, by its comprehensive nature, indicate a congressional intent to occupy the entire field of regulation. See, *e.g., Fidelity Fed. S. & L. Assn. v. De la Cuesta* (1982), 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 675. Finally, absent the complete displacement of state regulation, preemption will occur when the state law conflicts with the federal law. Conflict is present when compliance with both laws is impossible. *Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248, 256–257. Alternatively, a conflict may arise when state law hinders the attainment of federal objectives. *Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587.

■ The insurer argues that express preemption is provided in Section 905(a) of the LHWCA, which states that an employer's liability under the Act "shall be exclusive and in place of all other liability of such employer to the employee * * *." Unlike the Ohio workers' compensation system, the LHWCA permits an employer to secure payment of benefits through a private carrier as well as with self-insurance. Section 932(a). Such a carrier, in this case Aetna, discharges the duties of the employer under the LHWCA, and likewise operates under the jurisdiction of the deputy administrator. Section 935. Thus, the insurer is entitled to the immunity afforded by Section 905(a).

■ The Act does not indicate, however, whether the exclusivity provision was intended to encompass liability beyond that arising from the injury or death of an employee. The court in *Balyint, supra,* construed similar language in R.C. 4123.74 and Section 35, Article II of the Ohio Constitution, and held that immunity did not extend to an employer's termination of benefits. A similar view of the LHWCA prevails in one federal circuit. *Martin v. Travelers Ins. Co.* (C.A. 1, 1974), 497 F.2d 329. At least one other circuit, however, has concluded that such conduct is contemplated by the provision. *Hall v. C & P Tel. Co.* (C.A.D.C.1987), 809 F.2d 924.

It is questionable whether an express intent to preempt state claims such as Daley's may be gleaned from Section 905(a), considered alone. Nevertheless, we adopt the view of the Fifth Circuit and hold that preemptive intent is apparent both from the pervasiveness of the federal regulation and the likelihood of conflicts between state and federal law. See *Atkinson v. Gates, McDonald & Co.* (C.A. 5, 1988), 838 F.2d 808.[1] Cf. *Hall, supra.*

The LHWCA permits insurers to controvert liability by suspending compensation payments upon filing a notice of controversion with the deputy administrator. Sections 914(c), (d). If the insurer discontinues voluntary payments without filing the notice, the insurer is subject to a ten-percent penalty on any overdue installments. Section 914(e). Where payments were required under the terms of an award, the penalty is twenty percent unless the order was stayed pending review. Section 914(f). A claimant who successfully defends controversion may recover attorney fees and expenses. Section 928. The Act also imposes criminal penalties against an employer who makes a false statement for the purpose of reducing benefits, Section 931(c), fails to secure payment of benefits, Section 938(a), or transfers assets to avoid payment of compensation, Section 938(b).

These provisions comprise a comprehensive regulation of the manner by which an employer or insurer may contest its liability. The criminal sanctions contained in the LHWCA strongly imply that Congress did not intend to impose liability for less culpable conduct. This view finds support in the legislative history as well. *Atkinson, supra,* at 811.

■ Moreover, the probability of conflict between state and fedeal law is patent. It is undisputed that the insurer complied with the notice provisions of the LHWCA. Within the constraints of the Act, the right of controversion

---

1. In its motion for summary judgment, the insurer relied upon *Texas Employers' Ins. Assn. v. Jackson* (C.A. 5, 1987), 820 F.2d 1406, reversed on other grounds upon rehearing (C.A.5, 1988), 862 F.2d 491, 496, fn. 7, in which the court resolved, among other issues, preemption by the LHWCA. We note the decisions are consistent in their resolution of the preemption issue.

is "absolute" and "unfettered." *Id.* at 810. To measure the insurer's conduct in terms of good faith would inject an element into the Act which Congress has not seen fit to include.

Our disposition of the preemption issue renders it unnecessary to consider the substantive merits of Daley's claim. We note, however, that conduct which is immunized under the LHWCA cannot be viewed as "wrongful" within the meaning of *Balyint, supra.* See *Atkinson, supra,* at 812.

Accordingly, the trial court correctly concluded there were no issues of material fact, and that the insurer was entitled to judgment as a matter of law. Civ.R. 56(C). The judgment of the common pleas court is affirmed.

*Judgment affirmed.*

PATTON and DYKE, JJ., concur.