**TALIK, Appellant,**

v.

**FEDERAL MARINE TERMINALS, INC., Appellee.**

[Cite as *Talik v. Fed. Marine Terminals, Inc.*, 172 Ohio App.3d 704, 2006-Ohio-3979.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 87073.

Decided Aug. 3, 2006.

McDonald, Hopkins, Burke & Haber, Jerome W. Cook, and Glenn D. Southworth, for appellant.

Tucker, Ellis & West, L.L.P., Irene C. Keyse–Walker, Jeffrey A. Healy, and Richelle W. Kidder, for appellee.

---

CHRISTINE T. McMONAGLE, Judge.

{¶ 1} Plaintiff-appellant, Joseph Talik, appeals the trial court's judgment granting summary judgment in favor of defendant-appellee, Federal Marine Terminals, Inc. ("Federal Marine").

{¶ 2} Federal Marine employs longshoremen for its cargo-handling operations on waterways, including the Great Lakes. Talik, one of Federal Marine's longshoremen, suffered a workplace injury on September 10, 2004, while working at the port of Cleveland. Specifically, the injury occurred when a stack of pipes collapsed and fell on Talik's right leg. The injury resulted in amputation of the leg. As a result of his injury, Talik filed a lawsuit in common pleas court seeking damages from Federal Marine under a common-law employer-intentional-tort theory.

{¶ 3} Federal Marine filed a motion for summary judgment in which it contended that the Longshoremen's and Harbor Workers' Compensation Act

("LHWCA" or "the Act"), Section 901 et seq., Title 33, U.S.Code, preempted Talik's state-law tort claim. Alternatively, Federal Marine argued that even if Talik's state-law tort claim was not preempted by the LHWCA, he failed to satisfy his burden of proof for such a claim. The trial court granted Federal Marine's motion for summary judgment.[1] Talik appeals, raising two assignments of error for our review.

{¶ 4} In his first assignment of error, Talik contends that the trial court erred in granting summary judgment in favor of Federal Marine because his intentional-tort claim was not preempted by the Act. We agree.

{¶ 5} Summary judgment is appropriate pursuant to Civ.R. 56(C) when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. Our standard of review on summary judgment is de novo. *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 445, 666 N.E.2d 316.

{¶ 6} Section 902(2), Title 33, U.S.Code provides that " 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment."

{¶ 7} Further, Section 905(a), Title 33, U.S.Code reads as follows:

{¶ 8} "Employer liability; failure of employer to secure payment of compensation. The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter or to maintain an action at law or admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the

---

1. The court's entry does not specify which of Federal Marine's arguments it based its grant of summary judgment on.

negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title."

{¶ 9} Federal Marine argues that Section 905(a) provides the exclusive remedy for covered workers and embodies Congress's intention for employers to provide no-fault compensation in return for immunity from tort liability.[2] Talik, on the other hand, argues that there is an intentional-tort exception to the otherwise exclusive provisions of Section 905(a), when read in tandem with Section 902(2). Specifically, Talik contends:

{¶ 10} "There is no express inclusion of the concept of an 'intentional tort' in the definition of 'injury' except that the concept of a 'willful act' is included if the injury arises from the actions of a 'third party.' Significantly, the definitional section of the LHWCA does not equate the identity of a 'third party' with that of the employer. See, 33 U.S.C. § 902."

{¶ 11} In support of his argument, Talik relies upon a Louisiana case, *Taylor v. Transocean Terminal Operators, Inc.* (La.App.2001), 785 So.2d 860. In that case, the court held that Taylor, a longshoreman who was stabbed at work by a fellow employee, had properly filed an intentional-tort claim because the exclusive-remedy provision of the LHWCA was not applicable to an intentional tort by or attributable to the defendant/employer.

{¶ 12} In so holding, the Louisiana court noted:

{¶ 13} "The notion that a claim for an intentional tort committed by an employer is an exception to a statutory exclusive remedy compensation scheme is familiar in the context of Louisiana's worker's compensation law. Louisiana's worker's compensation statute provides that it does not affect the liability of the employer for civil liability resulting from an intentional act. La. R.S. 23:1032.B. Thus, it has been held that an intentional tort by an employer is not subject to the 'exclusive remedy' provision of Louisiana's worker's compensation law and may give rise to a tort action by the employee against the employer. See, e.g., *Bazley v. Tortorich*, 397 So.2d 475 (La.1981). This is typical of state worker's compensation laws. *Bazley*, 397 So.2d at 480 (citing 2A Larson, The Law of Workmen's Compensation §§ 68–69 (1976))." Id. at 862.

---

2. Talik applied for and received Ohio workers' compensation benefits, and Federal Marine also opened a file on Talik's behalf for federal benefits under the LHWCA.

{¶ 14} The United States Supreme Court has held that the LHWCA is a typical workers' compensation program. *Northeast Marine Terminal Co. v. Caputo* (1977), 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320.

{¶ 15} In *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, the Supreme Court of Ohio determined that the immunity bestowed upon employers under Ohio's workers' compensation laws did not reach intentional torts committed by an employer. The court reasoned that an employer's intentional tort occurs outside the employment relationship. In *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, the court clarified that an injury that is the product of an employer's intentional tort is one that also arises out of and in the course of employment and, thus, an injured worker may both recover under the workers' compensation system and pursue an action against his or her employer for intentional tort. See, also, *Brady v. Safety–Kleen* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus.

{¶ 16} Thus, because the LHWCA is a workers' compensation program, and because in Ohio an employee may maintain a workers' compensation claim and an intentional-tort claim, we hold that the LHWCA does not preempt Talik's state-law claim.

{¶ 17} We find the cases cited by Federal Marine distinguishable from this case. For instance, in *Cornell v. Parsons Coal Co.* (1993), 96 Ohio App.3d 1, 643 N.E.2d 1154, the employee filed an intentional-tort complaint for on-the-job injuries. The employee dismissed the complaint, and upon refiling, asserted claims for negligence, gross negligence, and intentional tort. On the first day of trial, the employee announced that he was going to proceed on a claim of negligence under the federal law found in the LHWCA. The employer objected to the new theory of liability. The trial then proceeded on the intentional-tort claim. The jury rendered a verdict on the employer's behalf, and the employee appealed to the Seventh Appellate District. The court of appeals reversed the trial court on the claim of negligence, finding that the trial court should have permitted the employer to proceed on the negligence claim under the LHWCA.

{¶ 18} On remand, the employer filed a motion for summary judgment, in which it argued that the employee was not entitled to proceed on his negligence claim under the Act. The trial court granted the employer's motion, and the employee appealed, contending that the employer's ground for summary judgment was an affirmative defense that was not raised by way of a pleading and, thus, was waived. The Seventh District held that the negligence claim could go forward only if the employee established that the employer had failed to secure the necessary workers' compensation coverage. The court did not address the

appropriateness of an intentional-tort claim in light of the exclusivity provisions of the LHWCA.

{¶ 19} Similarly, in *White v. Bethlehem Steel Corp.* (E.D.Tex.1995), 900 F.Supp. 51, also cited by Federal Marine, the Texas district court did not address the issue of the appropriateness of an intentional-tort claim in light of the exclusivity provisions of the LHWCA. Rather, the court considered whether a borrowed servant of Bethlehem Steel was precluded from asserting a negligence claim against it in light of the Act.

{¶ 20} In another case cited by Federal Marine, *Hall v. C & P Tel. Co.* (C.A.D.C.1986), 793 F.2d 1354, the Court of Appeals for the District of Columbia considered the issue of whether the district's workers' compensation act precluded the employee from asserting a civil claim against an employer in addition to a workers' compensation claim.

{¶ 21} Other cases cited by Federal Marine relate to claims regarding the administration of benefit payments under the Act. See *Atkinson v. Gates, McDonald & Co.* (S.D.Miss.1987), 665 F.Supp. 516; *Daley v. Aetna Cas. & Sur. Co.* (1988), 61 Ohio App.3d 721, 573 N.E.2d 1128; *Texas Emp. Ins. Assn. v. Jackson* (C.A.5, 1987), 820 F.2d 1406; and *Kelly v. Pittsburgh & Conneaut Dock Co.* (C.A.6, 1990), 900 F.2d 89.

{¶ 22} For example, in *Daley*, supra, this court held that the LHWCA preempted state-law claims. The issue in that case, however, was a limited one and distinguishable from the issue in this case. In *Daley*, the plaintiff sued the carrier who insured his employer's liability under the Act, for bad faith and intentional infliction of emotional distress when his total-temporary-disability payments were discontinued. In finding preemption as to the plaintiff's claims, this court noted that specific provisions of the Act, namely Sections 914(c) through (f), 928, and 931(a) through (c), allow insurers to discontinue payments and set forth the procedure for discontinuation and the penalties for a wrongful discontinuation. This court noted that *"[t]hese provisions* comprise a comprehensive regulation of the manner by which an employer or insurer may contest its liability," and thus found preemptive intent. (Emphasis added.) Id., 61 Ohio App.3d at 724, 573 N.E.2d 1128. In finding preemption relative to the above-mentioned provisions, this court noted that "[i]t is questionable whether an express intent to preempt state claims * * * may be gleaned from Section 905(a), considered alone." Id.

{¶ 23} In this case, Talik alleged a totally different tort (i.e., an intentional tort) than did the plaintiff in *Daley* (i.e., bad faith and intentional infliction of emotional distress). The intentional tort is not covered under Ohio workers' compensation law, nor is it specifically mentioned and resolved in the LHWCA. The intentional tort is, therefore, not preempted by the Act.

{¶ 24} We note the United States Supreme Court case of *Morrison–Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dept. of Labor* (1983), 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194, cited by Federal Marine, and the language therein. The court, however, did not consider the specific issue of whether an employee can maintain an intentional-tort claim in light of the LHWCA. Rather, the issue before the court in *Morrison–Knudsen* was whether Congress intended to include employer contributions to union trust funds in the Act's definition of "wages."

{¶ 25} Accordingly, we find that Talik's intentional-tort claim was not preempted by the LHWCA and sustain his first assignment of error.

{¶ 26} In his second and final assignment of error, Talik argues, alternatively, that if the LHWCA preempts his intentional-tort claim, the trial court still erred in granting Federal Marine's motion for summary judgment, because the exclusivity provisions of the Act are in the nature of an affirmative defense and were waived by Federal Marine because they were never raised as such. Because we find that Talik's intentional-tort claim is not preempted by the LHWCA, his second assignment of error is moot, and we decline to address it. See App.R. 12(A)(1)(c).

■ {¶ 27} We consider a final issue, however, not assigned as an error by Talik, but raised by Federal Marine in its brief before this court and in its motion for summary judgment in the trial court.[3] In particular, Federal Marine argues, alternatively, that if Talik's intentional-tort claim is not preempted by the Act, then the federal "deliberate" or "specific intent" standard, rather than the Ohio "substantial certainty" standard, applies to his claim. Federal Marine cites *Hess v. Norfolk S. Ry. Co.*, 106 Ohio St.3d 389, 835 N.E.2d 679, in support of its argument. *Hess*, however, is distinguishable from this case.

{¶ 28} In particular, the employees in *Hess* sued the employer railroad company in the state trial court under the Federal Employers' Liability Act ("FELA"), Section 51 et seq., Title 45, U.S.Code. The Supreme Court of Ohio held that the substantive law is the federal law in actions filed under the FELA. Here, Talik did not sue under the LHWCA; rather, he brought an independent intentional-tort claim, and state law governs.

---

**3.** The crux of Federal Marine's argument in its motion for summary judgment was that Talik's intentional-tort claim was preempted by the LHWCA. However, as previously mentioned, Federal Marine did argue that even if Talik's claim was not exempted, he failed to demonstrate an intentional tort. The trial court did not specify the grounds upon which it granted Federal Marine's motion. Moreover, Talik filed a motion for summary judgment, wherein he argued that pursuant to *Fyffe*, there was no genuine issue of material fact on his intentional-tort claim and, thus, he was entitled to judgment as a matter of law.

{¶ 29} In *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, the Supreme Court of Ohio set out the test used to determine whether an employer has committed an intentional tort. In such a case, the plaintiff must prove:

{¶ 30} "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;

{¶ 31} "(2) knowledge by the employer that if the employee is subjected by his employment to such a dangerous process, procedure, instrumentality, or condition, then harm to the employee will be a substantial certainty; and

{¶ 32} "(3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id. at 118, 570 N.E.2d 1108.

{¶ 33} According to *Fyffe*, a plaintiff must offer proof beyond that required for negligence or recklessness. Id. In the absence of direct evidence of intent, a plaintiff may prove such a claim by inferred intent. Id.

{¶ 34} The Ohio legislature passed R.C. 2745.01, effective October 20, 1993. This legislation was intended to revise the requisite elements and standards of an employer intentional tort. The statute, however, was found to be unconstitutional because it imposed excessive standards and a heightened burden of proof for plaintiffs seeking a remedy for an employer intentional tort. See *Johnson v. BP Chem., Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107 ("Because R.C. 2745.01 imposes excessive standards (deliberate and intentional act), with a heightened burden of proof (clear and convincing evidence), it is clearly not a 'law that furthers the * * * comfort, health, safety, and general welfare of all employees' "). Id. at 308, 707 N.E.2d 1107, quoting Section 34, Article II, Ohio Constitution.

{¶ 35} Since that time, the Ohio legislature has repealed R.C. 2745.01 and passed H.B. 498, revising R.C. 2745.01 effective April 4, 2005. The revised statute is less stringent than the former. The injury in this case occurred on September 10, 2004, and Talik filed his action on November 1, 2004. Hence, there is no controlling statute, and *Fyffe* and its progeny control our determination.

{¶ 36} In support of his motion for summary judgment relative to his intentional-tort claim pursuant to *Fyffe*, Talik submitted, among other items, the following evidentiary materials: his affidavit, excerpted deposition testimony from his immediate supervisor, Mark Chrzanowski, Federal Marine's "Injury/Death or Illness Investigation Report," five coworkers' affidavits, and an expert's report.

{¶ 37} In its brief in opposition to Talik's motion for summary judgment, Federal Marine first challenged the five coworkers' affidavits. Specifically,

Federal Marine pointed out that Talik's counsel contacted the coworkers, without notice to it, and questioned them under oath in the presence of a court reporter. Their testimony was later transcribed and allegedly summarized in their affidavits.

{¶ 38} Upon discovering that the "secret interviews," as Federal Marine referred to them, had been conducted, Federal Marine sought, and received, disclosure of the transcripts of the sworn testimony. Federal Marine argued that the affidavits reflected neither the sworn testimony given by the coworkers nor their subsequent deposition testimony. Thus, Federal Marine argued that the trial court should not consider the affidavits. Federal Marine further argued that the affidavits contained statements that were inconsistent with or contradictory to the transcripts of the interviews and the subsequent deposition testimony of the coworkers.

{¶ 39} Initially, we find that the affidavits were properly before the trial court for its consideration. The means by which Talik's counsel obtained the affidavits did not render them unacceptable evidentiary evidence pursuant to Civ.R. 56. The affidavits were sworn to by each of the coworkers and, thus, adopted as their statements.

{¶ 40} In regard to Federal Marine's argument about the inconsistencies or contradictions in the affidavits as compared to the transcripts of the interviews, the coworkers' sworn testimony has not been made a part of the record for our review and, thus, we are unable to compare the alleged offending statements.

{¶ 41} The depositions of the coworkers, however, are part of the record. Upon review of those depositions in comparison with the affidavits, we find that several of the alleged inconsistencies or contradictions really are not inconsistencies or contradictions. For example, one of the coworkers averred in his affidavit as follows:

{¶ 42} "I am aware that Joe [Talik] and Bob [Talik's partner on the day of the accident] had complained to Mark Chrzanowski [their supervisor] over the course of two to three weeks that they needed time to properly break down and sort that pile."

{¶ 43} Federal Marine points to that same coworker's deposition testimony, wherein he testified, "I wasn't present when Joe and Bob talked to Mark directly." These two statements, however, are not inconsistent or contradictory. The coworker did not aver in his affidavit that he was present when Talik and his partner complained to Federal Marine's management; he only averred that he was aware that complaints had been made.

**{¶ 44}** In regard to other statements provided by the coworkers that arguably could be inconsistent or contradictory, we note that, generally, inconsistencies in a party or witness's affidavit, as compared to deposition testimony, create a question of credibility to be resolved by the trier of fact. See *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123, paragraph one of the syllabus.

**{¶ 45}** Thus, not only were the affidavits properly before the court, they, along with the deposition testimony, created a genuine issue of material fact.

**{¶ 46}** Secondly, Federal Marine, in opposition to Talik's motion for summary judgment, challenged the opinions of Talik's expert. On this issue, we agree with Federal Marine.

**{¶ 47}** Evid.R. 702 provides:

**{¶ 48}** "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

**{¶ 49}** Additionally, Evid.R. 704 provides:

**{¶ 50}** "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

**{¶ 51}** Thus, Evid.R. 702 and 704 permit expert testimony on the ultimate issue to be determined by the trier of fact if (1) the witness is qualified as an expert and (2) scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to decide an issue of fact. *Lee v. Baldwin* (1987), 35 Ohio App.3d 47, 49, 519 N.E.2d 662; *McQueen v. Goldey* (1984), 20 Ohio App.3d 41, 48, 20 OBR 44, 484 N.E.2d 712. While testimony on an ultimate issue to be decided by the trier of fact is not per se inadmissible, it is within the discretion of the trial court to refuse to admit the testimony of an expert witness on an ultimate issue where the expert's testimony is not essential to the trier of fact's understanding of the issue and the trier of fact is capable of coming to a correct conclusion without it. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph three of the syllabus. Further, "[a]n expert may not offer an opinion which embraces the 'ultimate issue' if that opinion is essentially a bare conclusion significantly lacking in supporting rationale." *Gannett v. Booher* (1983), 12 Ohio App.3d 49, 52, 12 OBR 190, 465 N.E.2d 1326.

**{¶ 52}** Here, Talik's expert opined that Federal Marine "knew" that stacking pipe without blocking or other means of positive support was improper and created a dangerous workplace; that improperly stacked pipe could release

without warning, causing the pile to collapse; and with a substantial degree of certainty, that the collapsing pile would result in injury.

{¶ 53} In *Wesley v. Northeast Ohio Reg. Sewer Dist.* (Feb. 22, 1996), Cuyahoga App. No. 69008, 1996 WL 75709, this court affirmed the trial court's exclusion of the plaintiff's expert's affidavit in an intentional-tort action. In so holding, this court noted that "[a] review of the expert's affidavit and supporting evidence shows it to be replete with conclusory statements regarding NEORSD's knowledge." Id. at 13. The Twelfth Appellate District similarly stated in *Sanfrey v. USM Corp.* (Dec. 17, 1990), Clinton App. No. CA90–02–003, 1990 WL 208869, that the expert's "credentials did not qualify him to testify as to the mindset or knowledge of [the employer's] or its employees at the time of the accident." Id. at 14–15.

{¶ 54} Thus, we find that the opinions expressed in Talik's expert report regarding what Federal Marine "knew" (or "should have known") were not proper.

{¶ 55} That notwithstanding, we find that the other evidence in the record still created a genuine issue of material fact to be litigated. We have already referred to the coworkers' affidavits and deposition testimony. Additionally, we note the deposition testimony of Talik's supervisor, Mark Chrzanowski (that he was aware of the risks associated with handling a stack of pipes and had witnessed a spontaneous collapse of the stack of pipes; that prior to the accident, Talik had complained to him; and that he had, prior to Talik's accident, made recommendations to Federal Marine to improve the safe handling of the pipes); Federal Marine's "Injury/Death or Illness Investigation Report" (indicating the responsible party for the injury was Federal Marine, that the accident occurred during Talik's normal work duties, that the accident occurred when "Joe was standing in front of a pile of pipe that was not stable and some pipe shifted trapping Joe's leg," and that "management issues—inadequate procedures" played a part in the accident); Talik's affidavit and deposition testimony (that in the two-to-three-week period leading up to his accident, he complained to Chrzanowski about the working conditions); and the experts' opinions (that the pipes were improperly stacked).

{¶ 56} Accordingly, we find that the trial court erred in granting Federal Marine's motion for summary judgment.

Judgment reversed
and cause remanded.

Rocco, J., concurs.

Cooney, P.J., dissents.

COLLEEN CONWAY COONEY, Presiding Judge, dissenting.

{¶ 57} I respectfully dissent.

{¶ 58} I would affirm the trial court's grant of summary judgment because the LHWCA preempts Talik's state-law tort claim.

{¶ 59} I would follow the precedent set in *Daley v. Aetna Cas. & Sur. Co.* (1988), 61 Ohio App.3d 721, 573 N.E.2d 1128, in which we found that an employee's claims of bad faith and intentional infliction of emotional distress were preempted by the LHWCA. We found that Section 905(a) of the LHWCA provides immunity to the employer and the insurance provider. We chose to adopt the view of the Fifth Circuit and held that "preemptive intent is apparent both from the pervasiveness of the federal regulation and the likelihood of conflicts between state and federal law." Id. at 724, 573 N.E.2d 1128.

{¶ 60} Moreover, another Ohio case found that the LHWCA places a burden on a plaintiff-employee to establish, as a prerequisite to pursuing an action at law, that the employer failed to secure payment of compensation for the employee. *Cornell v. Parsons Coal Co.* (1993), 96 Ohio App.3d 1, 4, 643 N.E.2d 1154.

{¶ 61} In the instant case, Talik has not sustained his burden to show that his employer failed to secure compensation for him. Therefore, I would affirm the trial court's grant of summary judgment, because the LHWCA provides the exclusive remedy for Talik's claim.